## THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **REGIS MURPHY, individually and on behalf of all others similarly-situated,** | |
| *Plaintiff,* | **CASE NO.: 5:24-cv-11168-JEL-CI** |
| **v.** | **The Honorable Judith Ellen Levy** |
| **THE AUTO CLUB GROUP,** | **Magistrate Judge Curtis Ivy, Jr.** |
| *Defendant.* | |

## <u>PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>

Named Plaintiff Regis Murphy (the "Plaintiff" or "Mr. Murphy"), on behalf of himself and a putative Settlement Class (collectively, "Plaintiffs") hereby moves this Court for an Order[1] (i) granting final approval to the parties' proposed Class Action Settlement Agreement and Release;[2] and (ii) granting final certification of the Class.

As explained further in the Brief, with the assistance of a highly-respected mediator, Plaintiff and Defendant The Auto Club Group ("Defendant") (collectively the "Parties") have reached a tentative class-wide resolution for which Plaintiffs now seek Court approval. Specifically, the proposed Settlement provides for Settlement Payments to approximately 184 Settlement Class Members. The Settlement Administrator will create a non-reversionary Settlement Account, into which Defendant will deposit a Gross Settlement amount of $1,000,000.00. The Settlement Class Members will not be required to take any action to receive a share of the funds, making it a "claims paid" settlement. Settlement Class Members are each entitled to a *pro rata* share of the net Settlement Amount, with estimated Settlement Payments of approximately $3,451.00 per Settlement Class Member.[3]

---

[1] The Proposed Order Granting Final Approval of Class Action Settlement is attached as **Exhibit A**.

[2] The Class Action Settlement Agreement and Release (the "Agreement" or "Settlement") is attached as **Exhibit B**. Certain defined terms contained herein shall have the same meaning as set forth in the Agreement.

[3] Estimated net *pro rata* Settlement Payments to class members are calculated as follows: $1,000,000 Gross Settlement, less up to $333,000 (attorneys' fees), less

As noted in Plaintiff's Motion for Preliminary Approval, the recovery on behalf of the Settlement Class is significantly higher than many other class action settlements in cases involving similar alleged violations of the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") approved by other federal courts.[4]

The Parties have fully complied with the terms of the Preliminary Approval Order, including providing notice of the Settlement to the Settlement Class. Under the governing standards for evaluating class action settlements in this Circuit, this Settlement is "fair, reasonable, and adequate," and Plaintiff respectfully asks that the Court approve it. *See Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009) (setting forth Rule 23's fairness standard).

---

up to $10,000 (litigation costs), less up to $10,000 (Named Plaintiff's Service Award), less $12,000 (estimated settlement administration costs), equals $635,000 (the Net Settlement Proceeds), divided by 184 estimated Settlement Class Members, equals approximately $3,451.00 (net Settlement Payment per Settlement Class Member).

[4] *See*, *e.g.*, *Green v. FCA US, LLC*, No. 2:20-cv-13079-GCS-DRG (E.D. Mich. August 8, 2022), ECF No. 42 (approving COBRA class settlement with net recovery of $10.41 per class member); *Vazquez v. Marriott Int'l, Inc*., No. 8:17-cv-00116-MSS-MAP (M.D. Fla. Feb. 27, 2020), ECF No. 127 (approving settlement of COBRA notice case that provided a gross recovery of $13.00 per class member); *Rigney v. Target Corp*., No. 8:19-cv-01432-MSS-JSS (M.D. Fla. Mar. 24, 2021), ECF Nos. 58, 59 (approving settlement with gross recovery of $17.00 per class member); *Hicks v. Lockheed Martin Corp, Inc*., No. 8:19-cv-00261-JSM-TGW (M.D. Fla. Dec. 11, 2019), ECF No. 41 (court approved class action settlement with gross recovery of $24.00 per class member).

Dated this 24th day of November, 2025

Respectfully submitted,

*s/ Nathan J. Fink*
David Fink (P28235)
Nathan Fink (P75185)
**FINK BRESSACK PLLC**
38500 Woodward Avenue
Suite 350
Bloomfield, MI 48304
Phone: (248) 971-2500
Email: dfink@finkbressack.com
Email: nfink@finkbressack.com

Eric Lechtzin (Fed. Bar ID 62096PA)
Marc Edelson (Fed. Bar ID 51834PA)
**EDELSON LECHTZIN LLP**
411 S. State Street, Suite N-300
Newtown, PA 18940
Telephone: (215) 867-2399
Facsimile: (267) 685-0676
elechtzin@edelson-law.com
medelson@edelson-law.com

Brandon J. Hill
**WENZEL FENTON CABASSA, P.A.**
1110 N. Florida Avenue
Tampa, Florida 33602
Telephone: (813) 223-5505
bhill@wfclaw.com

*Counsel for Plaintiff and the Proposed Class*

## THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**REGIS MURPHY, individually and on behalf of all others similarly-situated,**

      *Plaintiff,*

**v.**

**THE AUTO CLUB GROUP,**

      *Defendant.*

**CASE NO.: 5:24-cv-11168-JEL-CI**

**The Honorable Judith Ellen Levy**

**Magistrate Judge Curtis Ivy, Jr.**

## BRIEF IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## <u>STATEMENT OF THE ISSUES PRESENTED</u>

1.     Does the proposed Settlement Class meet Rule 23's requirements for class certification for settlement purposes?

**Plaintiff's Answer: Yes**.

2.     Should Plaintiff's counsel be appointed as Class Counsel and the Named Plaintiff appointed as Class Representative?

**Plaintiff's Answer: Yes**.

3.     Is the proposed Settlement fair, adequate, and reasonable, sufficient to warrant notice to the proposed Settlement Class?

**Plaintiff's Answer: Yes**.

## <u>STATEMENT OF CONTROLLING AUTHORITY</u>

Plaintiff relies on Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3) to demonstrate why the Court should certify the Settlement Class on a preliminary basis for settlement purposes only.

Plaintiff also relies on several federal court decisions approving similar class action settlements in COBRA notice cases like this, including *Green v. FCA US, LLC*, No.: 2:20-cv-13079-GCS-DRG (E.D. Mich. August 8, 2022), ECF No. 42; *Vazquez v. Marriott Int'l, Inc*., No. 8:17-cv-00116-MSS-MAP (M.D. Fla. Feb. 27, 2020), ECF No. 127; *Rigney v. Target Corp*., No. 8:19-cv-01432-MSS-JSS (M.D. Fla. Mar. 24, 2021), ECF Nos. 58, 59; *Hicks v. Lockheed Martin Corp, Inc*., No. 8:19-cv-00261-JSM-TGW (M.D. Fla. Dec. 11, 2019), ECF No. 41; and *Gilbert v. SunTrust Banks, Inc*., No. 9:15-80415-DLB (S.D. Fla. July 29, 2016), ECF No. 80.

## I. **BACKGROUND AND OVERVIEW OF MOTION.**

On May 21, 2024, Plaintiff filed his Class Action Complaint (ECF No. 1) ("Complaint") against Defendant in which he asserted claims for himself and a putative class under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by COBRA. The Complaint alleges that Defendant violated COBRA notice requirements by failing to timely provide him with a COBRA notice and, when the notice was provided to Plaintiff, it was deficient and failed to include certain information in violation of 29 C.F.R. § 2590.606-4(b)(4), *et seq*., and 29 U.S.C. § 1166(a). Defendant denies any wrongdoing with respect to these allegations. The Parties have since reached an Agreement that, if approved by this Court, will resolve all pending claims.

The Class Action Settlement Agreement and Release, attached hereto as Exhibit B, provides for Settlement Payments to be made to approximately 184 Settlement Class Members. The Settlement Administrator will create a non-reversionary Settlement Account, into which Defendant will deposit a Gross Settlement amount consisting of $1,000,000. Settlement Class Members will not be required to take any action to receive a Settlement Payment, making it a "claims paid" settlement. Settlement Class Members will receive a *pro rata* share of the net

1

Settlement Amount totaling approximately $3,451.00.[5] Given the size of the class, this amount is significantly higher than similar COBRA class action settlements that have been approved by other federal courts.

If any money remains in the Settlement Account after these distributions and after Settlement Class Members have had 60 days to cash their Settlement Payments, the Settlement Administrator shall pay leftover funds as a *cy pres* donation to a mutually-agreeable non-profit 501(c)(3) charity, subject to Court approval.

On July 29, 2025, the Court entered an Order granting Plaintiff's Unopposed Motion for Preliminary Approval of the Settlement (ECF No. 27). Pursuant to this Order, on August 18, 2025, the court-appointed Settlement Administrator disseminated the court-approved Notice to the Class. Importantly, no Class Member has objected to the Settlement or requested to be excluded from the Class. Accordingly, the Court's basis for granting preliminary approval is further supported by the reaction of the Class. For the reasons that follow, the Court should grant the instant motion for final approval of the Settlement.

## A.  <u>Plaintiff's Allegations</u>

This is a putative class action brought by Plaintiff against Defendant under 29 C.F.R. § 2590.606-4(b)(4), *et seq*., and 29 U.S.C. § 1166(a), alleging that Defendant

---

[5] The *pro rata* share of the net Settlement Amount assumes Court approval of the requested amounts for attorneys' fees, reimbursement of litigation costs, settlement administration expenses, and a Service Award to the Plaintiff.

provided Plaintiff and members of the putative Class with an untimely and deficient COBRA Notice.

Plaintiff is a former employee of Defendant ACG. (Complaint ¶ 16). He worked for ACG for approximately two years, during which time he obtained medical insurance for himself through Defendant's group health plan. (*Id*. at ¶ 6). On May 16, 2023, Plaintiff's employment was terminated, which triggered Defendant's COBRA notice obligations. (*Id*. at ¶¶ 7, 15).

Following his termination, Plaintiff received an untimely and deficient COBRA notice on February 1, 2024, making it approximately 217 days late. (*Id*. at ¶ 7). Rather than using the Model Notice, Defendant's COBRA administrator disseminated a notice that omitted critical information required by law, including the amount, if any, that Plaintiff would be required to pay for continuation coverage. (*Id*. at ¶ 9). Plaintiff alleges that this omission violated a key COBRA requirement, *i.e.*, the disclosure of the amount Plaintiff would be required to pay for continuation coverage. 29 C.F.R. § 2590.606-4(b)(4).

Because of the untimeliness and incomplete information in Defendant's COBRA notice, Plaintiff alleges he lost the ability to timely elect COBRA continuation coverage and, thus, lost his medical insurance for approximately seven months. He also incurred medical bills, and his medical providers threatened to send his bills to collections in November 2023 (three months before Defendant sent him

the deficient COBRA notice). Defendant's actions also caused Plaintiff to face further expenses related to the collections process and late fees. (*Id*. at ¶ 39).

As a result of the foregoing, Plaintiff brought this action to recover statutory penalties, injunctive relief, attorneys' fees, and costs on behalf of a Class that consists of all current and former participants in the Plan who, over the last six years, received untimely and/or deficient COBRA notices under 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4, and who did not elect COBRA coverage.

On July 10, 2024, Plaintiff filed a Notice of Voluntary Dismissal Without Prejudice as to Defendant Unify HR, the COBRA Administrator. (ECF No. 11). Defendant filed an Answer to the Complaint on July 12, 2024, raising a variety of defenses. (ECF No. 12). The Parties filed a Joint Discovery Plan on August 5, 2024 (ECF No. 14), and the Court entered a Scheduling Order on September 2, 2024 (ECF No. 19).

In September of 2024, Plaintiff sent notice to Defendant of his intent to serve a subpoena on ACG's third-party COBRA Administrator, Unify HR, LLC. Pursuant to this notice, Plaintiff obtained verification from Unify HR, LLC, that during its time as ACG's COBRA Administrator, beginning on May 17, 2021, approximately 184 individuals received COBRA election notices with deficiencies like those identified in the Complaint and did not enroll in COBRA.

B. **Defendant's Defenses**

Had mediation been unsuccessful, Defendant had a myriad of defenses to the Plaintiff's allegations. Defendant denied, and continues to deny, that it violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 with regard to Plaintiff and any putative class member. Defendant also denies that it engaged in any wrongdoing with respect to any facts or claims alleged against it in this case. However, Defendant agreed to resolve this action through this Settlement because of the substantial expense of continuing this litigation, the time required to resolve the issues presented, and the disruption to its business operations.

C. **Settlement Negotiations and Mediation**

The Parties attended mediation before R. Scott Callen on February 24, 2025. After a full day of negotiations, a tentative deal was reached. (*See* ECF No. 21). The process was thorough, adversarial, and professional, and resulted in an Agreement that, if approved, will fully and finally resolve this litigation.

II. **THE PROPOSED SETTLEMENT**

A. **The Settlement Class**

The Agreement defines the proposed Settlement Class as follows:

All participants and beneficiaries in the Plan who were not provided with a timely and compliant COBRA Continuation Coverage Election Notice by Defendant as a result of a qualifying event that occurred within the applicable statute of limitations period, as determined by Defendant's records, and did not elect continuation coverage (the "Settlement Class").

5

**B.**     **Benefits to Plaintiff and the Settlement Class**

The Agreement, if approved, will resolve all claims of Plaintiff and all Settlement Class Members in exchange for Defendant's agreement to pay $1,000,000.00 into the Settlement Account. This is a "claims paid" non-reversionary settlement. Every Settlement Class Member will receive a check for their Settlement Payment, without taking any action.

From the Settlement Account will be deducted amounts for the costs of settlement administration, Plaintiff's counsel's fees and litigation costs, and any Service Awards to Plaintiff, resulting in the "Net Settlement Proceeds." Each of the 184 Settlement Class Members will receive a *pro rata* Settlement Payment from the Net Settlement Proceeds of approximately $3,451.00. Any unclaimed funds shall revert to the proposed *cy pres* recipient, Legal Services of Eastern Michigan, a 501(c)(3) non-profit legal aid organization.[6]

**C.**     **Notice to the Class and the Lack of Objections**

Due process requires that notice to class members be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *United States v. Latham*, 54 F. App'x 441, 444 (6th Cir. 2002). For the due process standard to be

---

[6] A description of Legal Services of Eastern Michigan can be found at: https://www.lsem-mi.org/about-us/

met, "it is not required that the [class member] receive actual notice" so long as class counsel acted reasonably in selecting means likely to inform persons affected. *Id*. at 444–45. Here, the form and methods of notice of the proposed Settlement provided pursuant to the Preliminary Approval Order satisfy all due process considerations and Fed. R. Civ. P. 23(c)(2) and (e)(1).

Specifically, pursuant to the Preliminary Approval Order (ECF No. 27, PageID.320), on August 18, 2025, the Court-approved Settlement Administrator, Analytics Consulting LLC, provided the following notices to the Settlement Class: (1) the short form Notice of Settlement (attached as Exhibit 1 to the Agreement), was sent by first-class U.S. Mail to 183 Settlement Class Members; (2) the Notice was also emailed to 70 Class Members who had a valid email address in the Class Data; and (3) the long form notice, which was published on the Settlement Website (www.autoclubcobrasettlement.com). *See* Amended Declaration of Jeffrey Mitchell ("Mitchell Decl."), Doc. 35, at ¶¶ 6-10.

The notice plan fully informed Settlement Class members of the lawsuit and the proposed Settlement, enabling them to make informed decisions about their rights. Mitchell Decl., Doc. 35, ¶ 7, Ex. 1. At the time of this filing, there have not been any objections to the Settlement. Supplemental Mitchell Decl. at ¶¶ 6-7. Thus, the requirements of due process and Fed. R. Civ. P. 23 are satisfied.

**D.**    <u>**Attorneys' Fees and Costs and Plaintiff's Service Award**</u>

By separate application, Class Counsel have requested an award of attorneys' fees, expenses, and a Service Award for Plaintiff. Class Counsel will seek an award of attorneys' fees in the amount of one-third of the Gross Settlement Amount ($333,000), up to $10,000 for reimbursement of litigation expenses, and a $10,000 Service Award for Plaintiff. The Settlement Class was notified of these details in the Class Notice.

**E.**    <u>**Class Action Fairness Act ("CAFA") Notice**</u>

Defendant has submitted notices required by CAFA, 28 U.S.C. § 1715, to the appropriate Federal and State officials.

**III.**    <u>**MOTION AND SUPPORTING MEMORANDUM OF LAW.**</u>

**A.**    <u>**Standard of Review**</u>

Plaintiffs respectfully request that the Court determine that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23 (e)(2). In evaluating whether a settlement is fair, reasonable and adequate, the following factors inform the court's inquiry:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Moulton*, 581 F.3d at 349 (citation omitted). Consideration of these factors aids in the determination of "whether the interests of the class as a whole are better served if the litigation is resolved by settlement rather than pursued." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003) (citing MANUAL FOR COMPLEX LITIG. § 30.42 at 238 (3d ed. 1995)).

When examined under the applicable criteria, each and every factor supports final judicial approval of the Settlement, which is an excellent result for the Class.

### 1.   There is No Risk of Fraud or Collusion

"[C]ourts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Sheick v. Auto. Component Carrier LLC*, No. 2:09-CV-14429, 2010 WL 4136958, at *19 (E.D. Mich. Oct. 18, 2010) (citing *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006)). Approval is appropriate where "the Settlement was negotiated at arm's length" – *i.e.*, where there is no collusion or benefit to certain parties to the detriment of the class as a whole. *In re Cardizem CD Antitrust Litigation*, 218 F.R.D. at 530.

As noted above, the Settlement was reached after nearly a year of litigation and only after Plaintiff obtained sufficient discovery. This discovery included serving a subpoena on Defendant's third-party COBRA Administrator, Unify HR, LLC. Pursuant to this subpoena, Plaintiff obtained verification from Unify HR, LLC, that during the relevant time period, there were 184 individuals provided with

COBRA election notices with deficiencies similar to those identified in the Complaint who also did not enroll in COBRA. Lechtzin Decl. ¶ 7.

Armed with this information, the Parties agreed to mediate early to see if a class resolution could be reached. Based on the undersigned's extensive experience litigating cases alleging deficient COBRA notices, Class Counsel was well prepared to mediate this case. This is borne out by the ultimate recovery, which, if approved, will result in a payment to each Settlement Class Member that exceeds most settlement payments made in similar cases involving allegedly deficient COBRA notices. There are no grounds from which to doubt that the Settlement is free from fraud or collusion. *See Sheick v. Auto. Component Carrier, LLC*, No. 09-14429, 2010 WL 3070130, at *13 (E.D. Mich. Aug. 2, 2010) ("[N]egotiations of the Settlement Agreement were conducted at arm's-length by adversarial parties and experienced counsel, which itself is indicative of fairness, reasonableness, and adequacy[.]"). Accordingly, the first prong is satisfied.

## 2. <u>The Complexity, Expense, and Likely Duration of the Litigation Favor Settlement</u>

"Settlements should represent a 'compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'" *In re Cardizem CD Antitrust Litigation*, 218 F.R.D. at 523 (quoting *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983)). This is particularly true with class actions, which are "inherently complex." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985,

1013 (S.D. Ohio 2001). Moreover, "[S]ettlement avoids the costs, delays, and multiple of other problems associated with them." *Id*.

Plaintiff recognizes the possibility that the outcome of the case may not be as expected. Class Counsel believe that Defendants disseminated a deficient COBRA election notice that violated the requirements of the statute. However, Plaintiff is aware that Defendant disputes this position and that the Court (and ultimately the Court of Appeals for the Sixth Circuit) could disagree with Plaintiff.

In addition, presenting a COBRA class action of this type on the merits is a massive undertaking, with substantial risks, expense, and delay. Defendant forcefully raised defenses to their actions with respect to the COBRA election notices at issue, and there is no reason to believe they would not continue to do so through trial on appeal if necessary. The monetary consideration offered to the Class is far better than the possibility of achieving a larger recovery, if any, after an expensive and protracted trial and appeal.

### 3. <u>Plaintiff Engaged in Substantial Discovery</u>

Plaintiffs conducted sufficient discovery to support final approval of the Settlement. *See Sheick*, 2010 WL 4136958, at *19 n.3 (noting that "courts do not require formal discovery so long as the parties have adequate information in order to evaluate the relative positions"). In this case, prior to filing his Complaint, Class Counsel spent several months investigating the COBRA election notices at issue, as

well as the parties responsible for Defendant's COBRA compliance. Lechtzin Decl.

¶ 6. With respect to formal discovery, Plaintiff subpoenaed Defendant's third-party

COBRA Administrator, Unify HR, LLC, and obtained verification from Unify HR,

LLC, that during the relevant time period, there were 184 individuals provided with

COBRA election notices with deficiencies similar to those identified in the

Complaint. *Id*. This discovery, in addition to Class Counsel's extensive pre-suit

investigation, gave Class Counsel adequate information to fully evaluate its position

in this action.

> **4.** **The Likelihood of Plaintiffs' Success on the Merits Weighed
> Against the Consideration Offered in the Settlement Favors
> Approval**

The relative strength of Plaintiff's case weighed against the benefits of the

Settlement supports final approval. While Plaintiff and Class Counsel are confident

in Plaintiff's claims, they are cognizant of the risks that would accompany further

litigation. Indeed, Defendant has made clear that, absent a settlement, it would

continue its vigorous defense of this case. And of course, without a settlement, there

would be the uncertainty and expense of trial, and the risks and delay of inevitable

appeals. *See UAW v. Gen. Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151,

at *17 (E.D. Mich. Mar. 31, 2006) ("The obvious costs and uncertainty of such

lengthy and complex litigation weigh in favor of settlement.").

More specifically, Defendant would continue to assert numerous defenses on the merits, including that Plaintiff should recover nothing even if the Court were to determine that the COBRA Notice at issue had a technical deficiency. Indeed, numerous courts have rejected claims similar to those asserted here. *See Ctr. for Orthopedics & Sports Med. v. Horizon*, 2015 U.S. Dist. LEXIS 133763, at *16 (D.N.J. Sept. 30, 2015) (court did not impose statutory penalty because administrator did not act in bad faith); *Cole v. Trinity Health Corp.*, 2014 U.S. Dist. LEXIS 7047, *22 (N.D. Iowa Jan. 21, 2014), *aff'd*, 774 F.3d 423 (8th Cir. 2014) (court did not award statutory penalty even though administrator did not send COBRA notice to plaintiff because administrator acted in good faith and plaintiff suffered no damages); *Gómez v. St. Vincent Health, Inc.*, 649 F.3d 583, 590-91 (7th Cir. 2011), as modified (Sept. 22, 2011) (affirming district court's decision to decline to award statutory penalties where plan participants were not "significantly prejudiced by the delay in notification."); *Jordan v. Tyson Foods, Inc.*, 312 F. App'x 726, 736 (6th Cir. 2008) (affirming district court's decision to decline to award statutory penalties where counsel for the plan participant "was not able to articulate any appreciable harm" from the failure to provide notice).

Thus, the negotiated relief is more than adequate and outweighs the risk that Plaintiff would be unable to obtain class certification, survive summary judgment, and establish liability and damages at trial. Each of these phases of litigation would

have presented serious risks, which the Settlement allows the Settlement Class to avoid. *See In re Painewebber Ltd. P'ships Litig*., 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks.").

Given these concerns, Plaintiff and Class Counsel view the creation of the non-reversionary $1,000,000 Settlement Account—with an estimated $3,451.00 net payment per class member—to be a significant recovery for the Settlement Class. This is especially true considering the "all or nothing" nature of Plaintiff's statutory claims: if Plaintiff were to lose, the Class would get nothing. *See Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 833 (E.D. Mich. 2008) ("The parties recognize, and the Court concurs, that continued litigation would be a high stakes 'zero sum' undertaking, in which one party is likely to achieve complete victory while the opposing party experiences complete defeat because the parties' core positions … are irreconcilable."); *Olden v. LaFarge Corp.*, 472 F. Supp. 2d 922, 933 (E.D. Mich. 2007) ("The fact that the settlement amount may equal but a fraction of potential recovery does not render the settlement inadequate. Dollar amounts are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.") (internal quotation omitted).

Further, in terms of monetary relief, the Settlement's projected per claim payment far exceeds settlement amounts in similar cases involving allegedly

deficient COBRA notices. *See Vazquez v. Marriott International, Inc*., No. 8:17-cv-00116-MSS-MAP (M.D. Fla. Feb. 27, 2020), ECF No. 127 (approving settlement with gross recovery of $13 per class member in deficient COBRA notice case); *Rigney v. Target Corp*., M.D. No. 8:19-cv-01432-MSS-JSS (Mar. 24, 2021), ECF Nos. 58-59 (approving settlement with gross recovery of $17 per class member in deficient COBRA notice case); *Hicks v. Lockheed Martin Corp, Inc*., No. 8:19-cv-00261-JSM-TGW (M.D. Fla. Dec. 11, 2019), ECF No. 41 (approving settlement with gross recovery of $24 per class member in deficient COBRA notice case); *Gilbert v. SunTrust Banks, Inc*., No. 9:15-80415-DLB (S.D. Fla. July 29, 2016), ECF No. 80 (approving settlement with gross recovery of $32 per class member in deficient COBRA notice case).

Accordingly, this prong supports final approval of the Settlement.

### 5. <u>The Judgment of Experienced Class Counsel Weigh in Favor of Approval</u>

Courts recognize that the opinion of experienced, informed and competent counsel in favor of settlement should be afforded substantial consideration. *See Williams*, 720 F.2d at 922–23 ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."); *IUE-CWA*, 238 F.R.D. at 597 ("The judgment of the parties' counsel that the settlement is in the best interest of the settling parties 'is entitled to significant weight, and supports the fairness of the class settlement.'").

As detailed in their Declarations, Class Counsel have extensive experience litigating class actions, and COBRA notice cases in particular. Furthermore, Class Counsel have developed the issues in this case to an appropriate point for settlement. They conducted an extensive investigation, obtained the necessary discovery to evaluate the strength and value of the claims, and participated in negotiations facilitated by an experienced mediator. While much work would be needed to prepare this case for trial, Class Counsel possess a sufficient understanding of the claims, and believe that the Settlement is fair, reasonable and is in the best interests of the Class. This opinion weighs heavily in favor of final approval of the Settlement.

### 6.      The Reaction of Absent Members of the Settlement Class

A certain number of … objections are to be expected in a class action." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003). However, "[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Id*.

Here, the reasonableness and adequacy of the Settlement is evidenced by the fact that, following service of the Class Notice to 183 Class Members, not one has lodged an objection with the Court. Supplemental Mitchell Decl. ¶ 7.

### 7.      The Settlement's Consistency with Public Interest Favors Approval

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and

unpredictable' and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litigation*, 218 F.R.D. at 530 (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)). Settlements are particularly desirable in cases such as this one, where remedial measures must be implemented over extended periods of time. *See Berry v. Sch. Dist. of City of Benton Harbor*, 184 F.R.D. 93, 97 (W.D. Mich. 1998). Here, there are no contravening public interest justifications sufficient to support deviating from the public interest served by the settlement of this action, which provides monetary consideration to the Class. This factor weighs strongly in favor of approval.

### B.   Final Certification of the Class is Appropriate

On July 29, 2025, this Court entered an Order preliminarily certifying the Settlement Class pursuant to Rule 23(a) and 23(b)(3). (ECF No. 27). Nothing has changed since the entry of this Order that should cause the Court to alter its finding that the Settlement Class satisfies all of the prerequisites of Rule 23(a) and 23(b)(3). Indeed, the fact that none of the Settlement Class Members have objected to the

Settlement or requested exclusion provides additional support for granting final certification of the Settlement Class.

Rule 23(a) includes four prerequisites for class certification: numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a). The proposed Settlement Class satisfies all four of these requirements.

### 1.   <u>Numerosity</u>

Rule 23(a)(1) first requires Plaintiff to show that the number of persons in the proposed Settlement Class is so numerous that joinder of all class members would be impracticable. Fed. R. Civ. P. 23(a)(1); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (there is no strict numerical test for determining numerosity). Typically, a class of 40 or more is sufficient to satisfy numerosity. *Curry v. SBC Commc'ns, Inc.*, 250 F.R.D. 301, 310 (E.D. Mich. 2008) (noting that 40 class members is sufficient to satisfy the numerosity requirement). Here, there are approximately 184 members in the proposed Settlement Class. Thus, the numerosity standard is satisfied. *See Davidson v. Henkel Corp.*, 302 F.R.D. 427, 436–37 (E.D. Mich. 2014) (certifying a class of 49 plaintiffs).

### 2.   <u>Commonality</u>

Next, Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Commonality is satisfied when the claims depend on a common contention, the resolution of which will bring a class-wide resolution of the

claims. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011). The threshold for demonstrating the commonality requirement is not high, as "complete identity of issues is not required," *Merenda v. VHS of Mich., Inc*., 296 F.R.D. 528, 536 (E.D. Mich. 2013), and is satisfied when there is one question common to the class, the resolution of which will advance the litigation. *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 852–53 (6th Cir. 2013).

In this case, common questions of law and fact exist among Plaintiff and the proposed Class. Factually, all Settlement Class Members were participants in or beneficiaries of Defendant's health plan that is subject to COBRA, all were sent allegedly deficient and untimely COBRA Notices, and they did not elect COBRA continuation coverage following their receipt of such notice. Similar factual allegations have been found to satisfy commonality in COBRA cases. *See Morris v. US Foods, Inc*., No. 8:20-CV-105-SDM-CPT, 2021 WL 2954741, at *5 (M.D. Fla. May 17, 2021) (commonality satisfied in COBRA notice class action); *Vazquez v. Marriott Int'l, Inc.*, No. 817CV00116MSSMAP, 2018 WL 3860217, at *3 (M.D. Fla. Aug. 7, 2018) (commonality satisfied in COBRA notice case); *Pierce v. Visteon Corp.,* 2006 U.S. Dist. LEXIS 98847, at *12 (S.D. Ind. Sept. 14, 2006) (commonality satisfied where plaintiff challenged defendants' COBRA notice practices "as applied to the entire class").

Additional common questions exist here, including: (1) whether Defendant violated COBRA's timing and notice requirements; and (2) whether, and to what extent, statutory penalties are appropriate. Each Settlement Class Member received the allegedly deficient and untimely COBRA Notice and, as such, would have a claim for statutory penalties. Given the multiple questions of law and fact common to Settlement Class Members, the commonality requirement is satisfied.

### 3. **Typicality**

The typicality requirement "tend[s] to merge" with the commonality requirement. *Gen. Tel. Co. of the S.W. v. Falcon,* 457 U.S. 147, 157 n.13 (1982). "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *In re American Medical Systems, Inc.*, 75 F.3d at 1082. The test for typicality is not demanding and does not require the interests and claims of the plaintiffs to be identical. *See Reese v. CNH Am., LLC*, 227 F.R.D. 483, 487 (E.D. Mich. 2005).

Here, Plaintiff is typical of the Settlement Class he seeks to represent, as he received the same untimely COBRA Notice as the Settlement Class Members and his claims stem from that deficient and untimely COBRA Notice. *See Date v. Sony Elecs., Inc.*, No. 07-15474, 2013 WL 3945981, at *3 (E.D. Mich. July 31, 2013) ("Because all Class Members' claims arise from the same course of conduct … their

claims are based on the same legal theory and the typicality requirement, which is not onerous, is met."); *Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236, 243 (E.D. Mich. 1997) (finding typicality met where "the class representatives' claims [arose] from precisely the same events, legal documents, and consequences and legal theories affecting all [class members]").

Whether a COBRA Notice provides adequate information is not based on an individual's understanding of the Notice, but rather, an objective determination of whether the Notice complies with the statute. *See Rodriguez v. Int'l Coll. of Bus. & Tech., Inc.*, 364 F. Supp. 2d 40, 46 (D.P.R. 2005) ("Neither a plaintiff's actual knowledge of his rights under COBRA nor his prior COBRA related job responsibility, dispenses with a plan administrator's obligation to give the employee [proper] notification") (citing *Torres-Negron v. Ramallo Bros. Printing*, 203 F. Supp. 2d 120, 124–125 (D.P.R. 2002)).

Thus, whether the challenged COBRA Notice complies with the statute does not depend on Plaintiff's personal characteristics but, rather, on whether the COBRA Notice would be understandable by an average plan participant. 29 C.F.R. § 2590.606-4(b)(4). This is "an objective standard rather than requiring an inquiry into the subjective perception of the individual [plan] participants." *Wilson v. Sw. Bell Tel. Co.*, 55 F.3d 399, 407 (8th Cir. 1995) (interpreting regulatory requirements for Summary Plan Descriptions, which are subject to an identical regulatory

21

requirement to be written in a manner calculated to be understood by the average plan participant).

In sum, Plaintiff's claim is typical of all Settlement Class Members and its resolution does not depend on Plaintiff's personal characteristics. *Vazquez*, 2018 WL 3860217, at *4. Accordingly, Rule 23(a)(3) is satisfied.

### 4. <u>Adequacy</u>

The final Rule 23(a) prerequisite requires a finding that the class representative has and will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The two criteria for determining whether class representatives are adequate are (1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Int'l Union, UAW v. Ford Motor Co*., No. 05-74730, 2006 WL 1984363, at *19 (E.D. Mich. July 13, 2006) (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). Adequacy exists when the named plaintiff is a part of the class, possesses the same interest, suffered the same injury, and thus, seeks the same relief as the other class members. *See Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 562 (6th Cir. 2007) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997)).

Here, Plaintiff—like each of the Settlement Class Members—received the same deficient and untimely COBRA Notice from Defendant during the six years

preceding the filing of the Complaint. Thus, Plaintiff and the Settlement Class have the same interest in recovering the statutory damages, and Plaintiff does not have any interests antagonistic to those of the proposed Settlement Class. Indeed, Plaintiff's pursuit of this litigation is evidence of the same.

Likewise, proposed Class Counsel—Eric Lechtzin from Edelson Lechtzin LLP, and Brandon J. Hill and Luis A. Cabassa from Wenzel Fenton Cabassa, P.A.— have extensive experience litigating class actions of similar size, scope, and complexity to the instant action. They regularly engage in major complex litigation involving employment and consumer-related claims, including cases alleging deficient COBRA notices, like this case. Plaintiff's counsel have the resources necessary to conduct litigation of this nature and have been appointed lead class counsel by federal courts throughout the country in more COBRA notice cases than any other firm. *See generally* Declarations of Eric Lechtzin and Brandon J. Hill filed contemporaneously herewith.

Further, proposed Class Counsel have devoted substantial resources to pursuing claims against Defendant for the allegedly unlawful COBRA Notice, including, as described above, investigating Plaintiff's and the Settlement Class's claims, aggressively pursuing those claims, conducting both formal and informal discovery (including from Defendant's COBRA administrator), engaging in

extensive settlement discussions, preparing for and attending a lengthy mediation and, ultimately, negotiating the Settlement.

Accordingly, the adequacy requirement is met.

### 5.   The Requirements of Rule 23(b)(3) for Class Certification are Also Met

In addition to satisfying Rule 23(a), parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3). *See Amchem Products, Inc.*, 521 U.S. at 623. Here, Plaintiff seeks certification under Rule 23(b)(3), which allows a class action to be maintained if (1) questions of law or fact common to the class members predominate over any questions affecting only individual members; and (2) a class action is superior to other methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Both of these criteria are satisfied here for purposes of approving the Settlement.

#### (a)   Predominance

Rule 23(b)(3)'s predominance requirement focuses on whether the defendant's liability is common enough to be resolved on a class basis, *Wal-Mart Stores, Inc.*, 564 U.S. at 359, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc.*, 521 U.S. at 623. The Rule 23(b)(3) predominance requirement is akin to the commonality requirement of Rule 23(a) in that both require the existence of common questions of law and fact. However, Rule 23(b) imposes "the *more stringent requirement* that

common issues 'predominate' over individual issues." *Machesney v. Lar-Bev of Howell, Inc.*, 292 F.R.D. 412, 423 (E.D. Mich. 2013) (emphasis in original). In other words, where commonality is satisfied when there is a single factual or legal question common to the class, the "predominance requirement is met if this common question is at the heart of the litigation." *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). Common issues are at the heart of a case when "there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis...." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 339 (E.D. Mich. 2001).

Here, the common questions identified above predominate over any individualized issues. The central issues revolve around a uniform COBRA Notice sent to all Settlement Class Members, including whether that Notice was timely, complied with applicable statutory requirements and accompanying regulations, and whether Defendant should be required to pay statutory penalties for utilizing that allegedly deficient and untimely Notice.

In similar COBRA notice cases, courts have found that common issues predominated. *See Hicks*, No. 8:19-cv-261-JSM-TGW, Doc. 34 (M.D. Fla. Sept. 5, 2019) (finding the predominance requirement satisfied in COBRA notice case); *Valdivieso*, No. 8:17-cv-118-SDM-JSS, Doc. 89 (M.D. Fla. May 11, 2018) (same); *Morris*, 2021 WL 2954741, at *6 (same); *Vazquez*, 2018 WL 3860217, at *6 ("the

resolution of whether the COBRA Notice complied with the law, however, does not break into individualized inquiries; rather, it is an objective determination and central to the resolution of any claims of any purported class members. Thus, the question of individual class members' motivations is irrelevant as to Defendant's liability for the allegedly inadequate COBRA notice.").

Because Defendant utilized a standardized COBRA Notice form with respect to all Settlement Class Members, Plaintiff's claims "will prevail or fail in unison," and as such, predominance is met for purposes the Settlement. *In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, 722 F.3d at 859 (quoting *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013)); *see also Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524, 536 (E.D. Mich. 2015) (finding predominance satisfied).

### (b)   Superiority

The class action device is also the superior means of adjudicating this controversy because it "achieve[s] economies of time, effort and expense and promote[s] … uniformity of decision as to persons similarly situated." *Amchem Products, Inc.*, 521 U.S. at 615. Class actions are preferred over small, individual suits for damages because they provide a mechanism through which individuals who, under other circumstances, would not have the opportunity to seek redress from the defendant through litigation can do so. *Young v. Nationwide Mut. Ins. Co.*, 693

F.3d 532, 545 (6th Cir. 2012) (affirming finding that class litigation was a superior method of adjudicating plaintiffs' claims); *see also Amchem Products, Inc.*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). Actions alleging a "a single course of wrongful conduct are particularly well-suited to class certification," because they facilitate efficiency and uniformity. *Young*, 693 F.3d at 545 (citations and internal quotations omitted).

As the court held in *Coulter-Owens*, "given the commonalities, it makes sense to proceed as a class action and address the issues one time rather than [in] potentially hundreds of separate cases." 308 F.R.D. at 536. And in the context of certifying a class for settlement purposes, "a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Products, Inc.*, 521 U.S. at 620.

Here, all questions necessary to determine whether Defendant violated COBRA's (and its accompanying regulations') timing and notice requirements are common to all Settlement Class Members. As such, a class action is a much more efficient use of judicial and party resources than multiple actions.

Further, absent a class action, members of the Settlement Class would almost certainly find the cost of individually litigating their claims to be prohibitive. Indeed,

no other member of the proposed Settlement Class has brought any COBRA claims against Defendant, and thus, "there is no indication that any class member wants to individually control his or her own separate action." *Calloway v. Caraco Pharm. Lab'ys, Ltd.*, 287 F.R.D. 402, 408 (E.D. Mich. 2012). In fact, many members of the proposed Settlement Class may not even be aware that Defendant has allegedly violated their rights under COBRA's timing and notice requirements. Where class members are unlikely to discover (and vindicate) injuries absent certification of a class, class treatment is superior to the alternatives. *Young*, 693 F.3d at 545–46.

In the end, because common questions predominate and a class action is the superior method for adjudicating the controversy, maintenance of this action as a class action is appropriate for purposes of approving the Settlement.

## IV. <u>CONCLUSION</u>

For the reasons discussed herein, Plaintiff respectfully submits that the Settlement should be granted final approval because it is a fair and reasonable result when viewed against the governing standard. Moreover, the Settlement Class meets all the requirements of Fed. R. Civ. P. 23 and should be finally certified.

Dated this 24th day of November, 2025

Respectfully submitted,

*s/ Nathan J. Fink*
David Fink (P28235)
Nathan Fink (P75185)
**FINK BRESSACK PLLC**
38500 Woodward Avenue
Suite 350
Bloomfield, MI 48304
Phone: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com

Eric Lechtzin (Fed. Bar ID 62096PA)
Marc Edelson (Fed. Bar ID 51834PA)
**EDELSON LECHTZIN LLP**
411 S. State Street, Suite N-300
Newtown, PA 18940
Telephone: (215) 867-2399
elechtzin@edelson-law.com
medelson@edelson-law.com

Brandon J. Hill
**WENZEL FENTON CABASSA, P.A.**
1110 N. Florida Avenue
Tampa, Florida 33602
Telephone: (813) 223-5505
bhill@wfclaw.com

*Counsel for Plaintiff and the Proposed Class*